**Affirmed and Opinion Filed May 2, 2017**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-01531-CV

## IN THE INTEREST OF A.C., J.Y., J.Y. JR., L.B., AND E.B., CHILDREN

**On Appeal from the 304th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. JC-15-00958-W**

## MEMORANDUM OPINION

Before Justices Lang, Brown, and Whitehill
Opinion by Justice Whitehill

A pivotal issue in this appeal from a decree terminating parental rights is whether a parent's un-recanted statements in a mediated settlement agreement that statutory grounds for termination exist and termination is in the child's best interest, together with evidence of the State's plans for placing the child, constitute legally and factually sufficient evidence that termination is in the child's best interest.

Here, the state sued appellant (Mother) to terminate the parent–child relationships between her and her five children. Mother signed a mediated settlement agreement in which she stipulated that her parental rights would be terminated based on specific Family Code grounds "and best interest." After a prove-up hearing at which Mother had the opportunity to testify that termination would not be in the children's best interest but did not appear and do so, the trial

court signed a judgment that tracked the agreement by, among other things, terminating Mother's parental rights as to all five children.

Mother raises three issues. Her first two issues argue that the evidence was legally and factually insufficient to support the findings that terminations were in the children's best interest. Her third issue argues that the evidence was insufficient to support the decree's provision appointing the State's representative as the children's managing conservator.

We conclude that the evidence was sufficient to support the best interest findings and that the trial court's conservatorship decision was not an abuse of discretion. Accordingly, we affirm.

## I. BACKGROUND

In 2015, the Dallas County Child Protective Services Unit of the Texas Department of Family and Protective Services (Department) sued Mother to terminate her parental rights as to four children. The Department also sued three men, alleging that they were the children's fathers and seeking to terminate their parental rights.

In February 2016, the Department amended its petition to add allegations regarding a fifth child born to Mother earlier that month. The Department sought to terminate Mother's parental rights (and the father's rights) as to that child as well.

Several months later, Mother and her attorney signed a mediated settlement agreement in which she stipulated that her parental rights would be terminated as to all five children. The agreement further provided that:

- the Department's Director would be appointed the children's permanent managing conservator;

- the Department would consent to the children's adoption by certain named individuals, absent unforeseeable circumstances; and

–2–

- if the named individuals could not adopt the children for any reason, those individuals would become the children's permanent managing conservators, absent unforeseeable circumstances.

The agreement also provided that Mother would be appointed the children's non-parent possessory conservator and would have some supervised visitation rights. All parties agreed that the agreement was in the children's best interest. The agreement was filed with the trial court.

Mother later filed a motion and an amended motion to invalidate in part the mediated settlement agreement. The amended motion alleged that two children could not be placed as agreed and asked the trial court to require the parties to negotiate a new placement for the two children in question through mediation and, if necessary, through a placement hearing. The amended motion also asked the court to "Require the MSA's [mediated settlement agreement's] conditions of termination of Respondent's parental rights, including the legal grounds, be kept in place."

The trial court held a hearing and orally denied Mother's amended motion.

The case was set for jury trial, but that setting turned into a mediated settlement agreement prove-up before the court. Mother appeared solely by counsel. Caseworker Brennan Blakemore testified about the case's basic facts and the mediated settlement agreement's contents. The trial court also took judicial notice of its file including the agreement. Before resting, Mother's counsel said, "My client is not here today but she has signed the mediated settlement agreement, Your Honor."

The trial court signed a decree terminating Mother's parent–child relationships with all five children.[1] The decree also appointed Mother as non-parent possessory conservator of the children and awarded her supervised visitation with the children consistent with the agreement. It appointed the Department's Director as the children's permanent managing conservator.

---

[1] The decree also terminated the children's fathers' rights, but the fathers have not appealed.

Mother timely appealed.

## II. ANALYSIS

### A. Issues One and Two: Was the evidence legally and factually insufficient to support the trial court's findings that termination was in the children's best interest?

Mother's first issue argues that the evidence was legally insufficient to support the trial court's best interest findings. Her second issue argues factual insufficiency as to those findings.

#### 1. Applicable Law and Standards of Review

A court may terminate a parent–child relationship if it finds by clear and convincing evidence (i) one or more statutory grounds for termination and (ii) that termination is in the child's best interest. *See* TEX. FAM. CODE § 161.001(b)(1)–(2). Clear and convincing evidence is the measure or degree of proof that will produce in the fact-finder's mind a firm belief or conviction as to the truth of the allegations sought to be established. *Id.* § 101.007.

Non-exclusive factors relevant to the best interest determination include (i) the child's desires, (ii) the child's present and future emotional and physical needs, (iii) present and future emotional and physical danger to the child, (iv) the parent's parental abilities, (v) the programs available to assist a parent to promote the child's best interest, (vi) the parent's plans for the child, (vii) the stability of the home, (viii) the parent's acts or omissions that may indicate the parent–child relationship is not a proper one, and (ix) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). A best interest finding need not be supported by evidence of every *Holley* factor, particularly if there is undisputed evidence that the parental relationship endangered the child's safety. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Evidence of § 161.001(b)(1) termination grounds may also be probative of a child's best interest. *See id.* at 28.

Our standards of review reflect the elevated burden of proof at trial. *In re N.T.*, 474 S.W.3d 465, 475 (Tex. App.—Dallas 2015, no pet.). Under both legal and factual sufficiency

–4–

standards, we (i) consider all the evidence, (ii) defer to the factfinder's credibility determinations, and (iii) determine whether the factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. *Id*.

In assessing the evidence's legal sufficiency, we view the evidence in the light most favorable to the finding, assume the fact-finder resolved disputed facts in favor of its finding if a reasonable fact-finder could have done so, and disregard all contrary evidence that a reasonable fact-finder could have disbelieved or found incredible. *In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014). If no reasonable fact-finder could form a firm belief or conviction that the matter to be proven is true, the evidence is legally insufficient. *Id*. at 113.

In a factual sufficiency review, we consider all the evidence and determine whether the fact-finder could reasonably form a firm belief or conviction that the termination grounds were proved. *In re N.T.*, 474 S.W.3d at 475. We consider whether the disputed evidence is such that a reasonable fact-finder could not have reconciled the disputed evidence in favor of its finding. *Id*. If the disputed evidence is so significant that a fact-finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id*.

### 2. Best Interest Evidence

The court took judicial notice of its file, including the mediated settlement agreement. Mother does not dispute that she and her attorney signed the agreement. The agreement addressed the children's best interest in three different paragraphs:

> 1. All parties agree that this agreement, as set forth herein below, is in the best interest of . . . the children the subject of this suit and is entered into for no other reason.
>
> . . .
>
> 7. All parties agree that this agreement is entered into because it is in the best interest of the [children].
>
> 8. Respondent Mother . . . stipulates that her parental rights to [four of the children] . . . shall be terminated based only on 'O' grounds under Section

–5–

161 of the Texas Family Code and best interest and for no other reason. Additionally, Respondent Mother . . . stipulates that her parental rights to [the fifth child] shall be terminated based only on 'N' grounds under Section 161 of the Texas Family Code and best interest and for no other reason.

CPS caseworker Blakemore testified that as to the four older children, Mother had failed to comply with a court order under circumstances that satisfied § 161.001(b)(1)(O). Blakemore further said that Mother had constructively abandoned the fifth child under circumstances that satisfied § 161.001(b)(1)(N). Then Blakemore was asked, "Is termination of [Mother's] rights in the best interest of the children?" He answered, "Yes, it is." Blakemore gave similar testimony against the children's fathers.

Blakemore also explained that the parties had envisioned that four of the five children would be placed with a specific couple, but that couple had "turned the [two oldest] children back in." Those two children were in foster care. Blakemore said that the Department would continue to seek family placements for those two children. At the end of his direct examination, Blakemore was asked, "Do you believe that all of the requested relief is in the best interest of the children?" He answered, "Yes."

Mother's counsel asked Blakemore one question on cross examination:

Q      With respect to the [two] children who are not with the [agreed upon couple], will the Department make sure that mother still has some sort of visitation rights with those children in foster care?

A      Yes.

The Department did not adduce additional evidence, and Mother's counsel rested and closed without presenting any other evidence. But before resting, he said, "My client is not here today but she has signed the mediated settlement agreement, Your Honor."

Although she was not placed under oath, the children's guardian ad litem said in open court, "Your Honor, I do believe that this relief is in the best interest of the children." No one objected. *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997) (per curiam) ("[T]he opponent

of the testimony can waive the oath requirement by failing to object when the opponent knows or should know that an objection is necessary.").

### 3. Application of the Law to the Facts

Mother contends that the Department introduced legally and factually insufficient evidence to show that terminating her rights was in the children's best interest. She argues that the evidence about the children's best interest and the *Holley* factors was conclusory at best. And she argues that two recent Texas court of appeals decisions support the premise that a mediated settlement agreement, standing alone, is not sufficient evidence that a child's best interest will be served by terminating his or her parent's rights. *See In re Morris*, 498 S.W.3d 624 (Tex. App.—Houston [14th Dist.] 2016, orig. proceeding [mand. denied]); *In re K.D.*, 471 S.W.3d 147 (Tex. App.—Texarkana 2015, no pet.).

The Department offers two responses. First, it argues that Mother forfeited her complaint in the trial court under the doctrine of invited error. Second, it points out that Mother has not challenged the trial court's findings that Mother committed acts violating Family Code § 161.001(b)(1)(N) and (O), and it argues that these findings in turn support the best interest finding.

Binding precedent from this Court compels us to hold that the best interest evidence in this case was legally and factually sufficient. Specifically, *In re J.R.W.*, No. 05-15-00493-CV, 2015 WL 5050169 (Tex. App.—Dallas Aug. 27, 2015, pet. denied) (mem. op.), is controlling.

In *J.R.W.*, the children's father signed a mediated settlement agreement in which he agreed that his rights would be terminated pursuant to Family Code § 161.001(1)(O). *Id.* at *1. The agreement described the State's plans for placing the children and provided for possible supervised visitation. *Id.* At a bench trial, the father testified that (i) he agreed to the agreement's provisions, (ii) he understood the agreement and had been represented by counsel at

the mediation, and (iii) he believed the agreement was in the children's best interest. *Id.* After the trial court terminated the father's rights, he appealed and challenged the sufficiency of the best interest evidence. *Id.* at \*1, \*3. We rejected the father's legal and factual sufficiency challenges, concluding that the evidence was sufficient because the agreement showed (i) the State's plans for placing the children, (ii) that the father's parental abilities were lacking, based on his agreement that termination was in the children's best interest, and (iii) that the existing parent–child relationship was improper, again based on the father's agreement that termination was in the children's best interest. *Id.* at \*3.

This case is not materially distinguishable from *J.R.W.* The mediated settlement agreement in this case defined the State's plans for placing the children: the State would be the children's permanent managing conservator and would consent to placements with certain named individuals absent "unforeseeable circumstances." Blakemore testified that some of the preferred placements had failed, and that the State was seeking other family placements consistent with the agreement's essence. The agreement itself recognized that unforeseeable circumstances might prevent the agreed placements from taking place, but it did not condition terminating Mother's rights on the agreed placements. Mother agreed that termination was in the children's best interest, which under *J.R.W.* supports inferences both that her parenting abilities were lacking and that her existing relationships with the children were improper. *See id.* And, although the father testified at the *J.R.W.* termination hearing and here Mother appeared only through counsel, that distinction is not material for two reasons. First, in both instances the complaining parent had the opportunity to object but did not do so. Second, Mother's admissions in the mediated settlement agreement are substantially the same as the facts the *J.R.W.* father testified to. Thus, the facts proved in each case were materially the same.

We also observe that Mother's agreements to termination under § 161.001(b)(1)(N) and (O) support inferences adverse to Mother regarding potential dangers to the children, her parenting abilities, and her relationships with the children.

Mother relies on cases from other Texas courts of appeals to support her sufficiency challenges, but we follow our own precedents absent an intervening change in the law. *See MobileVision Imaging Servs., L.L.C. v. LifeCare Hosps. of N. Tex., L.P.*, 260 S.W.3d 561, 566 (Tex. App.—Dallas 2008, no pet.); *see also* TEX. R. APP. P. 47.7 cmt. ("All opinions and memorandum opinions in civil cases issued after the 2003 amendment have precedential value."). Consequently, Mother's argument fails.

Based on *J.R.W.*, we hold that the evidence was legally and factually sufficient to support the trial court's best interest finding. We overrule Mother's first two issues.

## B.     Issue Three:  Was the evidence legally and factually sufficient to support appointing CPS as managing conservator?

Mother's third issue challenges the sufficiency of the evidence supporting the trial court's appointment of the Department's Director as the children's permanent managing conservator. This decision is reviewed for abuse of discretion. *In re S.N., Jr.*, No. 05-16-01010-CV, 2017 WL 343599, at *5 (Tex. App.—Dallas Jan. 18, 2017, pet. denied) (mem. op.).

If (i) we have upheld the termination of a parent's rights and (ii) the parent put on no evidence that she is a "suitable, competent adult" to serve as managing conservator, it follows that the parent has not shown an abuse of discretion in appointing the Department as managing conservator. *Id.*; *see also In re N.T.*, 474 S.W.3d at 479–81. That is the situation here.

We overrule Mother's third issue.

–9–

## III. CONCLUSION

Having overruled Mother's issues, we affirm the trial court's judgment.


/Bill Whitehill/
BILL WHITEHILL
JUSTICE


161531F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF A.C., J.Y., J.Y. JR., L.B., AND E.B., CHILDREN

No. 05-16-01531-CV

On Appeal from the 304th Judicial District Court, Dallas County, Texas
Trial Court Cause No. JC-15-00958-W.
Opinion delivered by Justice Whitehill.
Justices Lang and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered May 2, 2017.